**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| RICHARD JOHNSON, Individually and for Others Similarly Situated | **Case No. ________________** |
| v. | Jury Trial Demanded |
| PULMONARY EXCHANGE, LTD. d/b/a PEL/VIP and MIDWEST NURSE STAFF | FLSA Collective Action<br>Rule 23 Class Action |

# CLASS AND COLLECTIVE ACTION COMPLAINT

## SUMMARY

1. Richard Johnson (Johnson) brings this class and collective action to recover unpaid wages and other damages from Pulmonary Exchange, Ltd. d/b/a PEL/VIP and Midwest Nurse Staff (PEL).

2. PEL employed Johnson as one of its Hourly Employees (defined below) in Washington.

3. PEL pays Johnson and its other Hourly Employees by the hour.

4. Johnson and the other Hourly Employees regularly work more than 40 hours a week.

5. But PEL does not pay them for all their hours worked.

6. Instead, PEL deducts 30 minutes a day from Johnson's and its other Hourly Employees' recorded hours for so-called "meal breaks," regardless of whether they actually receive a *bona fide* meal break (PEL's "auto-deduct policy").

7. Thus, PEL does not pay Johnson and the other Hourly Employees for that time.

8. But Johnson and the other Hourly Employees do not actually receive *bona fide* meal breaks.

9. Instead, PEL requires Johnson and its other Hourly Employees to remain on duty and perform compensable work throughout their shifts and PEL regularly subjects them to work interruptions during unpaid "meal breaks."

10. PEL's auto-deduct policy violates the Fair Labor Standards Act (FLSA) and Washington Minimum Wage Act (WMWA) by depriving Johnson and the other Hourly Employees of overtime wages of at least 1.5 times their regular rates of pay for overtime hours worked.

11. PEL likewise does not provide Johnson and the other Hourly Employees with *bona fide* rest periods of at least 10 minutes for every four hours worked (PEL's "rest period policy").

12. Instead, PEL requires Lehman and other Hourly Employees to remain on duty and perform their regular job duties throughout their shifts and/or subjects them to interruptions during attempted "rest periods."

13. PEL's failure to provide Johnson and other Hourly Employees in Washington with *bona fide* meal breaks and rest periods violates the Washington Industrial Welfare Act (WIWA) and related Washington Department of Labor and Industries (DOLI) regulations.

14. Likewise, as a result of its auto-deduct policy and rest period policy, PEL willfully withholds earned wages from Johnson and the other Hourly Employees in violation of the Washington Wage Rebate Act (WWRA).

**JURISDICTION & VENUE**

15. This Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because this case involves a federal question under the FLSA. 29 U.S.C. § 216(b).

16. This Court also has supplemental jurisdiction over the state-law subclass claims because these claims arise from a common nucleus of operative facts. 28 U.S.C. § 1367.

17. This Court has general personal jurisdiction over PEL because it is an Illinois corporation.

18. Venue is proper because PEL maintains its principal place of business in Cook County, Illinois, which is in this District and Division. 28 U.S.C. § 1391(b)(1).

## Parties

19. PEL employed Johnson as a respiratory therapist (RT) from approximately June 2021 until November 2024.

20. Throughout his employment, PEL employed Johnson under its auto-deduct policy and rest period policy.

21. PEL classified Johnson as a non-exempt and paid him by the hour.

22. Johnson's written consent is attached as **Exhibit 1**.

23. Johnson brings this class and collective action on behalf of himself and similarly situated PEL employees.

24. The putative FLSA collective is defined as:

> **All hourly employees who worked under PEL's auto-deduct policy during the last three years through final resolution of this action (the "FLSA Collective Members").**

25. The putative Washington class is defined as:

> **All hourly employees who worked under PEL's auto-deduct policy and/or rest period policy in Washington during the last three years through final resolution of this action (the "Washington Class Members").**

26. The FLSA Collective Members and Washington Class Members are collectively referred to as the "Hourly Employees."

27. PEL is an Illinois corporation headquartered in Oak Lawn, Illinois.

28. PEL may be served with process through its registered agent: **Ray Kalinsky, 9840 Southwest Hwy., Oak Lawn, Illinois 60453,** or wherever he may be found.

## FLSA COVERAGE

29. At all relevant times, PEL was an "employer" within the meaning of the FLSA. 29 U.S.C. § 203(d).

30. At all relevant times, PEL was an "enterprise" within the meaning of the FLSA. 29 U.S.C. § 203(r).

31. At all relevant times, PEL was an "enterprise engaged in commerce or in the production of goods for commerce" within the meaning of the FLSA because it had employees engaged in commerce or in the production of goods for commerce, or employees handling, selling, or otherwise working on goods or materials—such as cell phones, computers, and personal protective equipment—that have been moved in or produced for commerce. 29 U.S.C. § 203(s)(1).

32. At all relevant times, PEL had an annual gross volume of sales made or business done of not less than $1,000,000 each year.

33. At all relevant times, Johnson and the other Hourly Employees were PEL's "employees" within the meaning of the FLSA. 29 U.S.C. § 203(e).

34. At all relevant times, Johnson and the other Hourly Employees were engaged in commerce or in the production of goods for commerce.

## FACTS

35. PEL touts that it "create[s] cardio-pulmonary disease management programs and staff development tools that empower healthcare providers to take control of patient outcomes" including staffing "Respiratory Therapists in Hospitals, Post Acute Centers, Clinics, Home Health, DME, and state run programs."[1]

[1] https://pelvip.com/about-us/ *and* https://pelvip.com/respiratory-staff/ (last visited February 23, 2026).

36. To provide its patient care services PEL hires workers like Johnson and the other Hourly Employees.

37. PEL classifies Johnson and its other Hourly Employees as non-exempt and pays them by the hour.

38. While exact job titles and duties may differ, Johnson and the other Hourly Employees are subject to PEL's same or similar illegal policies—its auto-deduct policy and rest period policy—for similar work.

39. For example, Johnson worked for PEL as an RT from approximately June 2021 until November 2024.

40. Johnson's job duties included monitoring patients, assessing ventilator needs, providing asthma treatment, assisting in emergency pulmonary care, and generally assisting other medical staff in accordance with PEL's policies and procedures.

41. PEL paid Johnson $46 an hour.

42. PEL required Johnson to report his "on the clock" hours worked to PEL.

43. PEL's records reflect Johnson's "on the clock" hours each workweek.

44. Johnson typically worked approximately 12 hours a day and 4 to 5 days a week (48 to 60 hours a workweek) "on the clock."

45. But throughout his employment, PEL did not pay Johnson for all his hours worked.

46. Instead, PEL subjected Johnson to its auto-deduct policy.

47. Specifically, PEL automatically deducted 30 minutes a day from Johnson's recorded hours for so-called "meal breaks."

48. PEL expected Johnson to complete its "Break Sheet" confirming he received a "meal break," whether or not he received a *bona fide* meal break.

49. Thus, PEL did not pay Johnson for that time.

50. But throughout his employment, Johnson did not actually receive *bona fide* meal breaks.

51. Instead, PEL regularly required Johnson to perform compensable work throughout his shifts, including during his so-called "meal breaks."

52. And PEL failed to provide Johnson with a second 30-minute meal break when he worked in excess of 11 hours in a workday.

53. As a result of its auto-deduct policy, PEL failed to pay Johnson earned wages for all hours worked.

54. Likewise, as a result of its auto-deduct policy, PEL failed to pay Johnson premium overtime wages for all overtime hours during workweeks in which he worked more than 40 hours.

55. Likewise, PEL failed to provide Johnson with a *bona fide* 10-minute rest period for every four hours worked or major fraction thereof.

56. Rather, PEL required Johnson to work throughout his shifts, including during so called "rest periods" and/or subjected him to work interruptions during attempted rest periods.

57. Johnson and the other Hourly Employees perform their jobs under PEL's supervision and use materials, equipment, and technology PEL approves and supplies.

58. PEL requires Johnson and its other Hourly Employees to follow and abide by common work, time, pay, meal break, rest break, and overtime policies and procedures in the performance of their jobs.

59. At the end of each pay period, Johnson and the other Hourly Employees receive wages from PEL that are determined by common systems and methods that PEL selects and controls.

60. PEL requires Johnson and its other Hourly Employees to record their hours worked using its timekeeping system.

61. Thus, just as PEL's records reflect the number of hours Johnson worked "on the clock" each workweek, PEL also maintains records of the number of hours the other Hourly Employees work "on the clock" each workweek.

62. The other hourly employees typically work approximately 48 to 60 hours a workweek.

63. But, like Johnson, PEL fails to pay them for all their hours worked.

64. Indeed, PEL subjects its other Hourly Employees to the same or similar auto-deduct policy it imposed on Johnson.

65. Specifically, PEL automatically deducts 30 minutes a day from its other Hourly Employees' for so called "meal breaks."

66. PEL automatically deducts this time regardless of whether they actually receive full, uninterrupted, 30-minute meal breaks.

67. PEL simply assumes Johnson and its other Hourly Employees receive *bona fide* meal breaks each shift they work.

68. But, like Johnson, the other Hourly Employees do not actually receive *bona fide* meal breaks.

69. Instead, like Johnson, PEL requires the other Hourly Employees remain on duty and performing compensable work throughout their shifts, including during unpaid "meal breaks."

70. And, like Johnson, PEL subjects its other Hourly Employees to work interruptions during unpaid "meal breaks."

71. These work interruptions prevent the Hourly Employees from engaging in personal activities during unpaid "meal breaks."

72. In other words, Johnson and the other Hourly Employees are not relieved of all work duties during their unpaid "meal breaks."

73. And like Johnson, PEL failed to provide the other Hourly Employees with a second uninterrupted, 30-minute meal break when they worked more than 11 hours in a day.

74. Rather, during their unpaid "meal breaks," Johnson and the other Hourly Employees are forced to remain on duty and perform their regular job duties.

75. Thus, Johnson and the other Hourly Employees routinely spend their unpaid "meal breaks" performing work for PEL's—not their own—predominant benefit.

76. This unpaid time is compensable under the FLSA and Washington law because PEL knew or should have known: (1) Johnson and its other Hourly Employees were performing unpaid work during "meal breaks"; (2) they were interrupted with work duties during attempted "meal breaks"; (3) they were not completely relieved of all work duties during unpaid "meal breaks"; (4) they entirely skipped their "meal breaks" due to work demands; (5) their unpaid "meal breaks" were less than 30 consecutive minutes; (6) they were not free to engage in personal activities during their unpaid "meal breaks" because of work interruptions; (7) they remained on PEL's (or its client's) premises or under its supervision; and/or (8) they spent their unpaid "meal breaks" performing their regular job duties for PEL's predominant benefit.

77. PEL fails to exercise its duty as Johnson's and the other Hourly Employees' employer to ensure these employees are not performing work that PEL does not want performed during their unpaid "meal breaks."

78. And PEL knows Johnson and the other Hourly Employees routinely perform work "off the clock" during their unpaid "meal breaks" because it expects and requires them to do so.

79. Johnson and other Hourly Employees have complained to PEL's management and human resources about being forced to work during their unpaid "meal periods."

80. Despite accepting the benefits, PEL does not pay Johnson and the other Hourly Employees for the compensable work they perform during their automatically deducted "meal breaks."

81. Thus, PEL required, requested, suffered, or permitted Johnson and the other Hourly Employees to work during their unpaid "meal breaks."

82. Despite accepting the benefits, PEL does not pay Johnson and the other Hourly Employees for the compensable work they perform "off the clock."

83. Thus, PEL fails to pay Johnson and the other Hourly Employees at least 1.5 times their regular rates of pay—based on all remuneration—for hours worked in excess of 40 in a workweek.

84. Additionally, as with Johnson, PEL fails to provide other Hourly Employees in Washington with a *bona fide* 10-minute rest period for every four hours worked or major fraction thereof.

85. Instead, PEL requires them to work throughout their shifts, including during any so called "rest periods" and/or subjects them to work interruptions during attempted rest periods.

86. Under its auto-deduct policy and rest period policy, PEL fails to pay and withholds earned wages from Johnson and the other Hourly Employees in violation of the WIWA and related DOLI regulations, in addition to violating the FLSA, WMWA, and WWRA.

## CLASS AND COLLECTIVE ACTION ALLEGATIONS

87. Johnson brings his claims as a class and collective action under FED. R. CIV. P. 23 and Section 216(b) of the FLSA on behalf of himself and the other Hourly Employees.

88. Like Johnson, the other Hourly Employees are victimized by PEL's auto-deduct policy and/or rest period policy.

89. Other Hourly Employees worked with Johnson and indicated they were paid in the same or similar manner, performed similar work, and were subject to PEL's auto-deduct policy.

90. Based on his experience, Johnson is aware PEL's auto-deduct policy and/or rest period policy were imposed on other Hourly Employees.

91. The putative class of Hourly Employees includes more than 40 members.

92. The Hourly Employees are similarly situated in the most relevant respects.

93. Even if their precise job duties and locations might vary, these differences do not matter for the purpose of determining their entitlement to compliant meal breaks and rest periods, as well as earned wages, including overtime wages of at least 1.5 times their regular rates of pay—based on all remuneration—for all hours worked over 40 in a workweek.

94. The only relevant inquiry is whether the Hourly Employees were subjected to PEL's auto-deduct policy or rest period policy.

95. Therefore, the specific job titles or locations of the Hourly Employees do not prevent class or collective treatment.

96. Rather, PEL's auto-deduct policy and rest period policy render the Hourly Employees similarly situated for the purpose of determining their right to *bona fide* meal breaks and rest periods, as well as earned wages, including overtime wages.

97. PEL's records reflect the number of hours the Hourly Employees recorded working each week, "on the clock."

98. PEL's records further reflect it deducted 30 minutes a day from the Hourly Employees for so-called "meal breaks."

99. The back wages owed to Johnson and the other Hourly Employees can therefore be calculated using the same formula applied to the same records.

100. Even if the issue of damages were somewhat individual in character, the damages can be calculated by reference to PEL's records, and there is no detraction from the common nucleus of liability facts.

101. Therefore, the issue of damages does not preclude class or collective treatment.

102. Johnson's experiences are typical of the experiences of the other Hourly Employees.

103. Johnson has no interest contrary to, or in conflict with, the other Hourly Employees that would prevent class or collective treatment.

104. Johnson has an interest in obtaining the unpaid wages owed to the Hourly Employees under federal and Washington law.

105. Johnson and his counsel will fairly and adequately protect the interests of the other Hourly Employees.

106. Johnson retained counsel with significant experience in litigating complex class and collective actions.

107. A class and collective action is superior to other available means for the fair and efficient adjudication of this lawsuit.

108. Absent this class and collective action, many Hourly Employees will not obtain redress for their injuries, and PEL will reap the unjust benefits of violating the FLSA and Washington law.

109. Further, even if some of the Hourly Employees could afford individual litigation, it would be unduly burdensome to the judicial system.

110. Indeed, the multiplicity of actions would create hardship for the Hourly Employees, the Court, and PEL.

111. Conversely, concentrating the litigation in one forum will promote judicial economy and consistency, as well as parity among the Hourly Employees' claims.

112. Accordingly, a class and collective action is an appropriate method for the fair and efficient adjudication of this lawsuit.

113. The questions of law and fact that are common to each Hourly Employee predominate over any questions affecting solely the individual members.

114. Among the common questions of law and fact are:

(a) Whether PEL engaged in a policy and practice of deducting 30 minutes a workday from the Hourly Employees' for "meal breaks";

(b) Whether PEL required, requested, suffered, or permitted the Hourly Employees to work during their unpaid "meal breaks";

(c) Whether PEL failed to provide its Hourly Employees with a *bona fide* meal break (and second meal break for shifts exceeding 11 hours) in violation of the WIWA and related Washington DOLI regulations.

(d) Whether PEL failed to provide its Hourly Employees with a *bona fide* rest period for every four hours worked or major fraction thereof, in violation of the WIWA and related Washington DOLI regulations.

(e) Whether PEL failed to pay the Hourly Employees overtime wages at the required premium rates—based on all remuneration—for all overtime hours worked in violation of the FLSA and WMWA;

(f) Whether PEL willfully withheld earned wages from its Hourly Employees in violation of the WWRA;

(g) Whether PEL's decision not to pay the Hourly Employees overtime wages at the required rates—based on all remuneration—for all overtime hours worked was made in good faith;

(h) Whether PEL's decision to withhold earned wages from its Hourly

Employees was made in good faith; and

(i) Whether PEL's violations were willful.

115. As part of its regular business practices, PEL intentionally, willfully, and repeatedly violated the FLSA and Washington law with respect to the Hourly Employees.

116. There are many similarly situated Hourly Employees who have been denied overtime wages of at least 1.5 times their regular rates of pay in violation of the FLSA who would benefit from the issuance of a court-supervised notice of this lawsuit and the opportunity to join it.

117. PEL's auto-deduct policy and rest period policy deprived Johnson and the other Hourly Employees of overtime wages at the required premium rates for all hours worked after 40 in a workweek, which they are owed under federal law.

118. The Hourly Employees are known to PEL, are readily identifiable, and can be located through PEL's business and personnel records.

**PEL'S VIOLATIONS WERE WILLFUL**

119. PEL knew it employed Johnson and the other Hourly Employees.

120. PEL knew it was subject to the FLSA's and WMWA's overtime provisions.

121. PEL knew the FLSA and WMWA required it to pay non-exempt employees, including the Hourly Employees, overtime wages at rates of at least 1.5 times their regular rates of pay—based on all remuneration—for all hours worked in excess of 40 a workweek.

122. PEL knew it was subject to the WWRA.

123. PEL knew each Hourly Employee worked more than 40 hours in at least one workweek during the last 3 years because these employees were required to report their "on the clock" hours via PEL's timekeeping system.

124. PEL knew Johnson and the other Hourly Employees were non-exempt employees entitled to overtime.

125. PEL knew it was subject to the WIWA and the Washington DOLI regulations.

126. PEL knew the WIWA and the Washington DOLI regulations required it to provide employees, including the Hourly Employees, a *bona fide*, duty-free, and uninterrupted 30-minute meal break for every 5 hours worked and a duty-free 10-minute rest period for every 4 hours worked or major fraction thereof.

127. PEL knew its Hourly Employees did not waive their meal breaks.

128. Nonetheless, PEL automatically deducted 30 minutes a workday for so called "meal breaks."

129. PEL knew it failed to provide its Hourly Employees with *bona fide*, duty-free meal breaks and rest periods.

130. PEL knew its Hourly Employees did not actually receive *bona fide* meal breaks or rest periods.

131. PEL knew its Hourly Employees regularly spent their "meal breaks" and "rest periods" performing their regular job duties.

132. PEL knew, should have known, or recklessly disregarded whether its conduct described in this Complaint violated federal and/or Washington law.

133. Indeed, Johnson and the Hourly Employees complained about being forced to work during missed "meal breaks" and "rest periods" to PEL's supervisors, management, and/or HR.

134. PEL's failure to pay Johnson and the other Hourly Employees overtime at the required rates for all overtime hours worked was neither reasonable, nor was this decision made in good faith.

135. PEL knowingly, willfully, and/or in reckless disregard of applicable FLSA and Washington law carried out employment policies that systematically deprived its Hourly Employees of *bona fide* meal breaks and rest periods, earned wages, and premium overtime wages.

## COUNT I
## FAILURE TO PAY OVERTIME UNDER THE FLSA
## (FLSA COLLECTIVE)

136. Johnson brings his FLSA claim as a collective action on behalf of himself and the other FLSA Collective Members pursuant to 29 U.S.C. § 216(b).

137. PEL violated, and is violating, the FLSA by employing non-exempt employees, such as the FLSA Collective Members, in a covered enterprise for workweeks longer than 40 hours without paying them overtime wages at rates of at least 1.5 times their regular rates of pay for hours worked in excess of 40 in a workweek.

138. PEL's unlawful conduct harmed the FLSA Collective Members by depriving them of overtime wages they are owed.

139. Accordingly, PEL owes the FLSA Collective Members the difference between the wages actually paid and the required overtime wages actually earned.

140. Because PEL knew or showed reckless disregard for whether its auto-deduction policy violated the FLSA, PEL owes the FLSA Collective Members these wages for at least the past 3 years.

141. PEL is also liable to the FLSA Collective Members for an amount equal to all their unpaid overtime wages as liquidated damages.

142. Finally, the FLSA Collective Members are entitled to recover all reasonable attorneys' fees and costs incurred in this action.

## COUNT II
## FAILURE TO PAY OVERTIME UNDER THE WMWA
## (WASHINGTON CLASS)

143. Johnson brings his WMWA claim as a class action on behalf of himself and the other Washington Class Members pursuant to FED. R. CIV. P. 23.

144. PEL's conduct violates the WMWA. RCW 49.46, *et seq*.

145. At all relevant times, PEL was subject to the WMWA because PEL was (and is) an "employer" within the meaning of the WMWA. *See* RCW 49.46.010(4); *see also* RCW 49.48.082(6).

146. At all relevant times, PEL employed Washington Class Members as its covered "employees" within the meaning of the WMWA. *See* RCW 49.46.010(3); *see also* RCW 49.48.082(5)(a).

147. The WMWA requires employers, like PEL, to pay non-exempt employees, including the Washington Class Members, overtime wages at rates not less than 1.5 times their regular rates of pay for all hours worked in excess of 40 in a workweek. RCW 49.46.130 *and* RCW 49.46.090.

148. The Washington Class Members are entitled to overtime pay under the WMWA.

149. PEL violated, and is violating, the WMWA by failing to pay non-exempt employees, such as the Washington Class Members, overtime wages at rates of at least 1.5 times their regular rates of pay for all hours worked after 40 in a workweek, including hours worked off the clock during so called "meal breaks." *See* RCW 49.46.130; *see also* RCW 49.46.090.

150. PEL's unlawful conduct harmed the Washington Class Members by depriving them of the overtime wages they are owed under Washington law.

151. Accordingly, PEL owes the Washington Class Members the difference between the wages paid and the overtime wages earned (RCW 49.46.090) plus pre-judgment interest at a rate of 12% per annum (RCW 19.52.020).

152. Finally, the Washington Class Members are also entitled to recover their reasonable attorney's fees and costs incurred in this action. *See* RCW 49.46.30.

## <u>Count III</u><br>Willfully Withholding Earned Wages Under the WWRA<br>(Washington Class)

153. Johnson brings his WWRA claim as a class action on behalf of himself and the other Washington Class Members pursuant to Fed. R. Civ. P. 23.

154. PEL's conduct violates the WWRA. RCW 49.52, *et seq.*

155. At all relevant times, PEL was subject to the WWRA because PEL was (and is) an "employer" within the meaning of the WWRA. *See* RCW 49.46.010(4); *see also* RCW 49.48.082(6).

156. At all relevant times, PEL employed Washington Class Members as covered "employees" within the meaning of the WWRA. *See* RCW 49.12.005(4); *see also* RCW 49.48.082(5)(b).

157. The WWRA prohibits employers, like PEL, from depriving employees, including the Washington Class Members, of "any part of his or his wages" and from "pay[ing] any employee a lower wage than the wage such employer is obligated to pay such employee by any statute, ordinance or contract." RCW 49.52.050.

158. PEL violated, and is violating, the WWRA by willfully withholding earned wages from the Washington Class Members for the hours they worked during their on-duty "meal breaks" which PEL was obligated to pay under Washington law. *See* RCW 49.52.050.

159. PEL also violated, and is violating, the WWRA by willfully withholding earned overtime wages from the Washington Class Members, which Washington law obligated PEL to pay at rates not less than 1.5 times their regular rates of pay. *See* RCW 49.52.050.

160. PEL's unlawful conduct harmed the Washington Class Members by willfully withholding earned wages (including earned overtime wages at the required premium rate) from these employees, which they are owed under Washington law.

161. Accordingly, PEL owes the Washington Class Members their willfully withheld earned wages plus exemplary damages in an amount equal to 2 times their willfully withheld wages. RCW 49.52.070.

162. Finally, the Washington Class Members are also entitled to recover their reasonable attorneys' fees and costs incurred in this action. *See* RCW 49.52.070.

## COUNT IV
## FAILURE TO PROVIDE *BONA FIDE* MEAL AND REST BREAKS UNDER THE WIWA
## (WASHINGTON CLASS)

163. Johnson brings his meal break and rest period claims under the WIWA and related DOLI regulations as a class action on behalf of himself and the other Washington Class Members pursuant to FED. R. CIV. P. 23.

164. PEL's conduct violates the WIWA's (and the related DOLI regulations') meal requirements. RCW 49.12, *et seq.*; WAC 296-126-092.

165. At all relevant times, PEL was subject to the WIWA and related DOLI regulations because PEL was (and is) an "employer" within the meaning of the WIWA and the DOLI regulations. *See* RCW 49.12.005(3); WAC 296-126-002(1).

166. At all relevant times, PEL employed the Washington Class Members as covered "employees" within the meaning of the WIWA and the Washington DOLI regulations. *See* RCW 49.12.005(4); WAC 296-126-002(2).

167. The WIWA prohibits employers, like PEL, from employing employees, including the Washington Class Members, under conditions of labor detrimental to their health. RCW 49.12.020.

168. The DOLI regulations require employers, like PEL, to provide employees, including the Washington Class Members, meal breaks of at least 30 minutes which commence no less than 2 hours nor more than 5 hours from the beginning of the employees' shift. WAC 296-126-092(1).

169. The DOLI regulations further mandate that meal breaks shall be paid when the employee is required by the employer to remain on duty on the premises or at a prescribed work site in the interest of the employer. WAC 296-126-092(1).

170. The DOLI regulations also require employers, like PEL, to provide employees, including the Washington Class Members, rest periods of at least 10 minutes for every 4 hours of working time. WAC 296-126-092(4).

171. The DOLI regulations further prohibit employers, like PEL, from requiring employees, including the Washington Class Members, to work more than 4 hours or major fraction thereof without a rest period. WAC 296-126-092(4).

172. Washington law also requires employers, like PEL, to compensate employees, including the Washington Class Members, for denied, missed, or interrupted meal and rest periods. *See*, *e.g.*, *Androckitis v. Virginia Mason Med. Ctr.*, 556 P.3d 714 (Wash. Ct. App. 2024), *review denied*, 563 P.3d 448 (2025); *Chavez v. Our Lady of Lourdes Hosp. at Pasco*, 415 P.3d 224 (Wash. Ct. App. 2018); *Pellino v. Brinks Inc.*, 267 P.3d 383 (Wash. Ct. App. 2011).

173. Throughout the relevant period, PEL expected and required the Washington Class Members to remain on duty and perform compensable work throughout their shifts, including during their "meal breaks" and "rest periods."

174. The Washington Class Members were not relieved of all duties during their attempted meal and rest periods but instead were subject to work interruptions.

175. Thus, PEL violated, and is violating, the WIWA, WMWA, and related DOLI regulations by failing to provide the Washington Class Members *bona fide* meal breaks and rest periods. *See* RCW 49.12.020; WAC 296-126-092.

176. PEL's unlawful conduct harmed the Washington Class Members by depriving them of the *bona fide* meal breaks and rest periods they are owed under Washington law.

177. Accordingly, Lehman and the Hourly Employees are entitled to recover their unpaid wages for their missed meal breaks and rest periods, 30 minutes of pay as a penalty, and pre-judgment interest at a rate of 12% per annum. RCW 19.52.020.

178. Finally, Lehman and the other Hourly Employees are also entitled to recover their reasonable attorneys' fees and costs incurred in this action. RCW 49.12.150.

## JURY DEMAND

179. Johnson demands a trial by jury on all Counts.

## RELIEF SOUGHT

WHEREFORE, Johnson, individually and on behalf of the other Hourly Employees, seeks the following relief:

a. An Order designating this lawsuit as a collective action and authorizing notice to the Hourly Employees allowing them to join this action by filing a written notice of consent;

b. An Order certifying the putative classes action pursuant to FED. R. CIV. P. 23;

c. An Order appointing Johnson and his counsel to represent the interests of the Hourly Employees;

d. An Order finding PEL liable to the Hourly Employees for unpaid overtime wages owed under the FLSA, plus liquidated damages in an amount equal to their unpaid wages;

e. An Order finding PEL liable to Johnson and the other Hourly Employees for failing to provide them with *bona fide* meal plus all available statutory penalties;

f. An Order finding PEL liable to Johnson and the other Hourly Employees for all unpaid overtime wages owed under the WMWA;

g. An Order finding PEL liable to Johnson and the other Hourly Employees for all willfully withheld wages owed under the WWRA, plus exemplary damages in an amount equal to 2 times their willfully withheld wages;

h. A Judgment against PEL awarding Johnson and the other Hourly Employees all their unpaid overtime wages, liquidated damages, statutory damages, and any other available penalties, under the FLSA and Washington law;

i. An Order awarding attorneys' fees, costs, and expenses;

j. An Order awarding pre- and post-judgement interest at the highest applicable rates; and

k. Such other and further relief as may be necessary and appropriate.

Dated: March 2, 2026

Respectfully submitted,

**WERMAN SALAS P.C.**

By: */s/ Douglas M. Werman*

Douglas M. Werman
Maureen A. Salas
77 W. Washington St., Ste 1402
Chicago, IL 60602
Phone: (312) 419-1008
dwerman@flsalaw.com
msalas@flsalaw.com
*Local Counsel for Plaintiff*

Michael A. Josephson*
TX Bar No. 24014780
Andrew W. Dunlap*
TX Bar No. 24078444
**JOSEPHSON DUNLAP, LLP**
11 Greenway Plaza, Suite 3050
Houston, Texas 77046
Phone: (713) 352-1100
Fax: (713) 352-3300
mjosephson@mybackwages.com
adunlap@mybackwages.com

Richard J. (Rex) Burch*
TX Bar No. 24001807
**BRUCKNER BURCH, PLLC**
11 Greenway Plaza, Suite 3025
Houston, Texas 77046
Phone: (713) 877-8788
Fax: (713) 877-8065
rburch@brucknerburch.com

**Pro hac vice applications forthcoming*

**ATTORNEYS FOR JOHNSON & THE HOURLY EMPLOYEES**